**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.                                                    Case No. 6:20-cr-86-RBD-NWH

JUSTINA MARIA HOLLAND

_____

## ORDER

Before the Court is Defendant Justina Maria Holland's motion for compassionate release. (Doc. 186.) The motion is due to be granted.

## BACKGROUND

In October 2021, Ms. Holland was sentenced to eight years of imprisonment on twenty-two counts of mail and wire fraud, aggravated identity theft, and other fraud and theft offenses. (Doc. 85.) The Court denied multiple motions for compassionate release while she was incarcerated. (Docs. 122, 140, 153, 176.) She was released to home confinement in October 2025. (Doc. 190, p. 2.) She is expected to finish her term and begin supervised release in March 2027. (*Id.*)

On January 16, 2026, in a lengthy and inexpert *pro se* filing, Ms. Holland again sought compassionate release on a variety of grounds, including those the Court previously rejected. (Doc. 186.) But one of those grounds was new: on December 23, 2025, a doctor found lumps in both breasts and bloody discharge from her nipples and concluded she had a high risk of breast cancer, ordering

BRCA testing. (*Id.* at 22–23.) Then on January 8, 2026, she received an urgent referral for an appointment with a breast surgeon. (*Id.* at 30.) So she filed the motion a week later, calling the referral an "emergency." (*Id.* at 4.)

The Government opposed. (Doc. 190.) While the Government's attorney acknowledged the referral to a breast surgeon, she stated that "there does not appear to be any documented emergency." (*Id.* at 8.)

This response struck the Court as suspect. A few weeks earlier, the Department of Justice's ("DOJ") Office of the Inspector General ("OIG") published a report concluding that the Bureau of Prisons ("BOP") delayed scheduling urgent medical appointments, leading to the death by treatable cancer of an inmate sentenced by the Undersigned. *See* DEP'T OF JUST. OFF. OF INSPECTOR GEN., INVESTIGATION AND REVIEW OF THE FEDERAL BUREAU OF PRISONS' CONDITIONS OF CONFINEMENT AND MEDICAL TREATMENT OF FREDERICK MERVIN BARDELL AND RELATED REPRESENTATIONS TO THE COURT, UPON REFERRAL BY SENIOR U.S. DISTRICT JUDGE ROY B. DALTON, JR., at 50–51 (2026) ("OIG Report"). Part of the OIG Report concluded that DOJ's reliance on the BOP's representations without further inquiry contributed to Frederick Bardell's fate. *Id.* at 47.

Shortly thereafter, Ms. Holland filed two supplemental replies on January 28 and February 11 documenting additional delays and failures in care. (Docs. 191, 192.) The latter asserted that on February 9, a month after the referral,

the BOP finally scheduled Ms. Holland an appointment—but with a general surgeon, not a breast surgeon as the referral required. (Doc. 192, p. 8.) That filing also included a letter from Ms. Holland's doctor dated January 21, which stated that evaluation by a breast surgeon is "medically necessary and urgent." (*Id.* at 14.)

Concerned by this letter, the Court issued an Order on February 17 appointing Ms. Holland counsel and setting a hearing as soon as practicable, on February 26. (Doc. 193.) The Court advised both parties to "be prepared to discuss Defendant's medical records in full and anticipated medical needs, with accompanying documentation." (*Id.*) Mindful of the recent OIG Report, the Court ordered the Government's counsel to inquire further with the BOP to ensure that the Court was in possession of Ms. Holland's entire medical file and then to certify to the Court that she had done so. (*Id.*) The following day, the Government's counsel filed the certification, along with what she represented was Ms. Holland's complete medical file. (Doc. 198.)

But the medical file certified as complete was, in fact, not complete. It did not include the January 21 letter indicating the breast surgeon referral was urgent, nor did it include the January 8 referral itself. The Government's counsel took note of the fact that the files she was certifying as complete did not include these items, and thus, were not complete. (Doc. 205, p. 5 n.2.)

The Court held the hearing on February 26. (Doc. 199; *see* Doc. 204.) At the

3

hearing, the Government's coverage counsel had not seen the January 21 letter deeming the referral urgent. (Doc. 204, Tr. 4:4–6:7.) Counsel then conceded that the referral was urgent, contrary to the Government's written response. (*Id.* at 6:8–17.) The Court advised the Government that it intended to grant Ms. Holland compassionate release if she did not see a breast surgeon in thirty days, by March 27. (*See id.* at 9:17–10:5.) The Court emphasized the urgency of the matter and noted that she needed to be seen by a breast surgeon, not a general surgeon. (*See id.* at 7:7–8 ("This is a matter of exigency. It needs to be handled with alacrity."), 8:18–9:2.) The Court confirmed this oral ruling with a written Order a few days later, on March 4. (Doc. 200.)

On March 27, the deadline by which Ms. Holland was supposed to have seen a breast surgeon, Ms. Holland's counsel filed an update. (Doc. 206.) To the surprise of no one, the BOP did not do what it was ordered to do. Despite the Court's order for haste, the BOP took no action until March 20, more than three weeks after the hearing. (*Id.* at 2.) Incredibly, the BOP again scheduled Ms. Holland with a general surgeon, not a breast surgeon. (*Id.*) And to add insult to injury, the appointment was in Gainesville, not Orlando. (*Id.*) The appointment was set for March 23, but when Ms. Holland informed them of these issues, the BOP canceled it. (*Id.*) So on March 25, two days before the deadline, the BOP finally scheduled Ms. Holland with a breast surgeon in Orlando. (*Id.* at 2–3.) But—likely because the

4

BOP waited until the eleventh hour—the appointment was not available until April 8, nearly two weeks after the deadline and three full months after the initial urgent referral. (*Id.* at 3.) In response to this status update, the Government's counsel "acknowledge[d] that the timing of the appointment does not comply" with the Court's Order and essentially conceded to release. (Doc. 205, p. 1.)

Alongside this status report, the Government's counsel filed a motion to supplement Ms. Holland's medical records to explain the discrepancy identified at the hearing, stating that when Ms. Holland was transferred to home confinement, her medical care was taken over by a BOP third-party contractor. (*Id.* at 6.) Counsel acknowledged that the missing records were in the possession, custody, and control of the BOP via this contractor, but asserted that the failure to provide them was inadvertent because the BOP's attorney "provided the defendant's entire medical file *as it understood* the Court's order." (*Id.* at 2, 6, 9 (emphasis added).) Counsel now asks the Court for leave to file these finally complete medical records under seal. (*Id.* at 10.)

These matters are ripe.

### STANDARDS

The statute governing compassionate release, as amended by the First Step Act, sets forth the limited circumstances in which a court may modify a sentence. 18 U.S.C. § 3582(c)(1)(A). A court may grant release when: (1) the defendant

exhausted her administrative remedies with the BOP;[1] (2) the 18 U.S.C. § 3553 sentencing factors support release; (3) extraordinary and compelling reasons warrant release; and (4) the defendant is not a danger to the community. *See id.*; U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n, amended 2021). The defendant bears the burden of demonstrating release is warranted. *See United States v. Heromin*, No. 8:11-cr-550, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

The § 3553 factors include: (1) the nature of the offense and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the need to afford adequate deterrence; and (4) the need to protect the public. *See* 18 U.S.C. § 3553(a).

Under the amended guidelines, six circumstances now qualify as "extraordinary and compelling reasons" warranting release: (1) specific medical circumstances; (2) advanced age and deteriorating health in conjunction with length of time served; (3) specific family circumstances, such as the death of the caregiver of the defendant's minor child; (4) the defendant was a victim of sexual or physical abuse by a corrections officer, with specific proof requirements; (5) other reasons similar in gravity; or (6) an unusually long sentence made grossly

---

[1] The Court concludes that the administrative remedies requirement is met.

disparate due to a change in the law. *See* U.S.S.G. § 1B1.13(b). *See generally*

*United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021). One medical circumstance

that qualifies is "[t]he defendant is suffering from a medical condition that requires

long-term or specialized medical care that is not being provided and without

which the defendant is at risk of serious deterioration in health or death." U.S.S.G.

§ 1B1.13(b)(1)(C).

To evaluate whether a defendant poses a danger justifying detention, a court

should consider: (1) the nature and circumstances of the offense; (2) the weight of

evidence against the defendant; (3) the history and characteristics of the defendant;

and (4) the nature and seriousness of the danger to the community. *See* 18 U.S.C.

§ 3142(g).

## ANALYSIS

The failure to provide inmates with urgent medical care is now a well-

documented problem with the BOP. *See* OIG Report at 50–51. Three months ago,

with lumps in both breasts and bleeding from the nipples, Ms. Holland received

an urgent referral for a doctor's appointment to check for cancer. She still has not

seen a doctor. The BOP's repeated failures—to timely provide Ms. Holland with

an appointment, to get her to the right doctor, even to collect her complete medical

records—self-evidently show that Ms. Holland has an extraordinary and

compelling medical circumstance qualifying her for compassionate release. *See*

U.S.S.G. § 1B1.13(b)(1)(C) (specialized medical care not being provided, risking serious deterioration or death). The BOP is simply unwilling or unable to provide appropriate medical care.

The Court is not happy about releasing Ms. Holland prematurely. She's a convicted con artist. (*See* Docs. 58, 122, 133, 140, 153.) But a prison sentence should not include the added consequence of delayed diagnosis and treatment of cancer. She has served most of her time, had no issues with home confinement, and engaged in efforts at rehabilitation. Perhaps her health struggles will serve as a stark reminder to her of the serious consequences if she recidivates. So on balance, the remaining factors support release. (*See* Doc. 186, p. 4; Doc. 190, p. 2); 18 U.S.C. § 3553(a); 18 U.S.C. § 3142(g); *cf. United States v. Winckler*, No. 13-318, 2020 WL 1666652, at *3 (W.D. Pa. Apr. 3, 2020).

## CONCLUSION

Nothing seems to move the nation's federal prison system operators to improve their response to the urgent medical needs of the federal prison population. Court orders go unread or ignored. OIG reports are dismissed, recommendations unheeded. Sanctions brook no change. Outside medical referrals are like Solzhenitsyn's sick bay in the Soviet Gulag: a coveted but nearly inaccessible refuge for which only prisoners near death qualify for admission.[2]

---

[2] *See generally* Aleksandr Solzhenitsyn, ONE DAY IN THE LIFE OF IVAN DENISOVICH

Department of Justice attorneys must be mindful in dealing with the Bureau of Prisons to ensure they comply with their duty of candor to the Court. A client who repeatedly fails to comply with court orders and OIG recommendations falls into the "trust but verify" category of governmental agencies. There can be no presumption of regularity. The Bureau of Prisons will emerge unscathed, while the Government's lawyer—and most importantly, the inmate—will carry the scars of its misfeasance. *See United States v. Bardell*, No. 6:11-cr-401 (M.D. Fla. 2011); OIG Report at 47, 50–51.

Accordingly, it is **ORDERED AND ADJUDGED**:

1.     Ms. Holland's motion for compassionate release (Doc. 186) is **GRANTED**.

2.     Ms. Holland's sentence is **REDUCED** to time served as of **Thursday, April 9, 2026**. The Bureau of Prisons, and any contractor in privity with it, are **ORDERED** not to cancel Ms. Holland's appointment with the breast surgeon for April 8, 2026, and are further **ORDERED** to ensure that she has whatever accommodations she needs to attend that appointment. As of April 9, 2026, the Bureau of Prisons is further **ORDERED** to make whatever accommodations needed to end her sentence, given her home confinement status. Ms. Holland's

---

(Ralph Parker trans., Victor Gollancz 1963).

supervised release terms (Doc. 85) remain in effect, and her supervised release will begin on her release from home confinement. Ms. Holland is **DIRECTED** to report to the U.S. Probation Office at the George C. Young Federal Courthouse, 401 West Central Blvd. Orlando, FL 32801, within 48 hours of her release.

3. Ms. Holland's motion for an expedited ruling (Doc. 185) is **DENIED AS MOOT**.

4. The Government's motion to supplement the record so that it contains Ms. Holland's complete medical file (Doc. 205) is **GRANTED**. The Government is **DIRECTED** to file the supplement under seal.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 31, 2026.



ROY B. DALTON, JR.
United States District Judge